IN THE UNITED STATES DISTRICT COURT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ) ) ) INFORMATION ASSOCIATED ) WITH henryjogger@gmail.com THAT ) IS STORED AT PREMISES ) CONTROLLED BY GOOGLE, INC. ) | Magistrate No.: 17-318 <br><br> **UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, BRIANNA M. TETRAULT, being duly sworn depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google, Inc. ("Google"), an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. The information sought is evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

2. I, Brianna M. Tetrault, am a Special Agent of Homeland Security Investigations (HSI) Immigration and Customs Enforcement (ICE), United States Department of Homeland Security. As such, I am an "investigative or law enforcement officer of the United States" within

the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States, who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in the United States Code, including controlled substance offenses enumerated in Title 21 of the United States Code.

3. I am currently assigned to the HSI Pittsburgh Office of the Assistant Special Agent in Charge in the Contraband Smuggling Group, and have been so employed since June 2010. As a Special Agent, I am authorized to conduct investigations of alleged violations of immigration laws and customs laws, including offenses involving the importation of prohibited items, such as controlled substances, under Titles 18, 19, and 21 of the United States Code. While being trained as a Special Agent of HSI, your Affiant has received basic training at the Federal Law Enforcement Training Center located in Glynco, Georgia. I previously worked for the Pennsylvania Office of Attorney General, Bureau of Consumer Protection, from June 2006 to May 2010. As a Consumer Protection Agent, I investigated and enforced Pennsylvania Consumer Protection Laws. In 2006, I received a Bachelor of Arts degree in Government and History from Arcadia University in Glenside, Pennsylvania.

4. As part of my duties as a Special Agent with HSI, I investigate incidents where parcels are used for the purpose of transporting non-mailable matter, including controlled and regulated substances, in violation of federal law. In addition, I have participated in a number of narcotics and money laundering investigations that have resulted in the seizure of illegal drugs and evidence of drug violations, as well as the seizure of assets acquired with drug proceeds. I have conducted covert surveillance of suspected drug traffickers on numerous occasions, interviewed numerous individuals involved in the drug trafficking trade, participated in a Title III wiretap investigation, participated in the execution of numerous search and arrest warrants, assisted in the

arrest of drug traffickers, and assisted in the seizure of controlled substances. Based upon the above training and experience, I am familiar with the modus operandi of persons involved in illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances.

5. Based upon the abovementioned experience, I am familiar with the modus operandi of persons involved in illicit distribution of controlled and regulated substances, as well as the terminology used by persons involved in the illicit distribution of controlled and regulated substances. I am aware that persons involved in the illicit distribution of controlled and regulated substances routinely attempt to conceal their identities, as well as the location at which drug transactions take place. These people are also known to have vehicles, properties, utilities and other items purchased in the names of others in order to conceal the association of drug activities with financial transactions. I know that the individuals engaged in organized drug distribution and sales maintain extensive contact with persons from whom they receive drugs and with whom they receive drugs and with whom they distribute these drugs.

6. I am familiar with the facts and circumstances of this investigation based upon my review of the available information and also based upon information provided to me from others involved with the investigation currently being conducted. I have not included every fact known to me regarding this investigation, but instead have included those facts I believe are sufficient to establish probable cause that the violations set forth above have occurred and are occurring.

7. Based on my training and experience, and as set forth below, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have been committed by John CALABRO and others. There is also probable cause to search the information described in Attachment A, and which is contained in the e-mail account listed above that is

maintained by Google ("**henryjogger@gmail.com**") for evidence, fruits, and/or instrumentalities of these crimes, further described in Attachment B.

## Account to be Searched

8. The account to be searched is the following:

    a. E-mail account "**henryjogger@gmail.com**" maintained by Google, Inc. (Google), located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## Jurisdiction

9. This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such court) that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## Background Concerning Email

10. Based upon your Affiant's training, knowledge, and experience and also based upon information obtained by your Affiant through consultation with HSI Certified Forensic Examiners (CFE) trained in computers and related items, your Affiant knows the following pertaining to computers, e-mail, and the internet:

    a. The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device;

    b. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, an individual

computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any number of means, including modem, local area network, wireless and numerous other methods;

  c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends an e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means;

  d. Google provides an e-mail service, which is available to Internet users. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users;

  e. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone

numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users;

    f.  In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

    g.  Subscribers to Google may access their accounts on servers maintained and/or owned by Google from any computer connected to the Internet and located anywhere in the world. Any e-mail that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Google. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on Google's servers indefinitely. Further, even if the subscriber deletes an email, that e-mail may continue to be available on Google's servers for a certain period of time;

h.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Google's servers, and then transmitted to its end destination. A Google subscriber can store files, including e-mails and image files, on servers maintained and/or owned by Google. E-mails and image files stored on a Google server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the Google server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain on his/her computer. A search of the files on a subscriber's computer will not necessarily uncover the files that the subscriber has stored on the server of Google;

i.     In my training and experience, Google provides a "chat" function for its subscribers. This "chat" function allows for Google e-mail subscribers to communicate with each other in an instant messaging style of communication. Google maintains records of these "chats."

j.     In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## PROBABLE CAUSE

11.     On May 14, 2015, HSI Pittsburgh received information from HSI Indianapolis that Customs and Border Protection (CBP) in Indianapolis, IN, interdicted a parcel, bearing FedEx

tracking number 8062-1470-3136. The parcel was being shipped from "Zibo Shuo Fan Trading, Zibo Shan Dong, Zibo, CHINA 255000". The parcel was destined to "John Calabro, 419 Zara Street, Pittsburgh, PA US 15210". The parcel was inspected and found to contain two bags of an unknown substance. The substance was then tested by the CBP Chicago Laboratory and found to contain approximately 3.48 kilograms of Ethylone, a Schedule I controlled substance. On May 14, 2015, your Affiant requested the parcel to be transferred to HSI Pittsburgh so that a controlled delivery may be attempted. On Friday, May 15, 2015, the subject parcel was received by HSI Pittsburgh.

12. On Monday, May 18, 2015, the parcel was repackaged in anticipation of a controlled delivery. A PA Court of Common Pleas Anticipatory search warrant was obtained for the residence of 419 Zara Street. The triggering event was the subject parcel being taken into the residence.

13. Initially, investigators set up surveillance around 419 Zara Street at approximately 1219 hours. At approximately 1224 hours, PSP Trooper Dave Williams, acting in an undercover capacity, walked through the gate of 419. At approximately 1225 hours, Tpr. Williams knocked on the door to 419 and rang the bell several times, with no answer. Tpr. Williams then departed from the residence, with the subject parcel, without making the delivery.

14. Later on May 18, 2015, investigators again attempted the controlled delivery of the subject parcel. At approximately 1515 hours, Tpr. Williams, again acting in an undercover capacity, began walking toward 419 Zara Street. Several subjects had been viewed sitting on the porch of the residence. At approximately 1519 hours, Tpr. Williams made contact with a subject at the target residence, hereinafter referred to as CS1. Tpr. Williams stated that he had a parcel for

"John Calabro" and CS1 responded that he "lives here". CS1 then took the parcel from Tpr. Williams and took it inside of the residence. Tpr. Williams then departed from the residence.

15. At approximately 1522 hours, CS1 walked out from the residence to meet a dark-colored Pontiac sedan, with tinted windows that pulled up to the residence. A white male was also observed going down to the vehicle from the residence. Neither individual was seen to possess the parcel. These two subjects then departed in the vehicle.

16. At approximately 1527 hours, a white female departed from the residence on foot. At this point, investigators moved in and secured her. The female told investigators that CS1 had departed in the Pontiac with a friend. The female was advised by investigators that she was not under arrest and she agreed to assist investigators. She then contacted CS1 and asked CS1 to return to the target residence.

17. Also during this time, investigators executed the anticipatory search warrant at approximately 1535 hours. There were no other occupants found in the residence. The subject parcel was found stuffed into a stuffed animal in CS1's bedroom.

18. At approximately 1620 hours, the Pontiac pulled back up to the residence. Investigators, in vehicles, followed the Pontiac down Zara Street, to the residence. Investigators approached the heavily tinted vehicle and requested the four occupants to get out of the vehicle. CS1, who was in the vehicle, was escorted into the residence.

19. CS1 agreed to cooperate, was provided with Miranda warnings, and explained that about a month ago, CS1 went out to a club and met John CALABRO, whom CS1 knows as "JJ". CS1 saw someone give CALABRO a bag of money, totaling approximately $4,800.00, for the purpose of purchasing an "herbal organic tea" containing "Molly," (which investigators know is a

common street term for MDMA). CALABRO then asked CS1 to use their mailing address (419 Zara Street) to receive the suspect parcel and CS1 agreed.

20. CS1 said that CALABRO had been tracking the arrival of the suspect parcel on his phone and noticed that it was late. CS1 said that CALABRO was calling the shipper, but this shipper kept stating that the package was stuck in Customs. The shipper related that it should arrive on May 12, 2015, which was the previous Tuesday. CS1 said that CALABRO asked to stay at CS1's residence for two days (Tuesday the 12th and Wednesday the 13th) to await the arrival of the package. CS1 said that the agreement with CALABRO was that he would pay CS1 an undetermined amount of money for allowing the package to be delivered to their address.

21. John CALABRO, who was also a passenger in the Pontiac, was escorted into the residence to be interviewed. While CALABRO was sitting in the residence, prior to the time that he was interviewed, TFO Walker was transporting the seized evidence from the residence. CALABRO saw the subject parcel and told investigators that was his parcel. At approximately 1639 hours, your Affiant read Miranda Warnings to CALABRO. CALABRO said that he understood his rights and agreed to speak to investigators without the presence of an attorney. CALABRO told investigators that he had ordered "hypnotic tea" from China, from a website that he located on Google. CALABRO said that he paid with prepaid cards through PayPal. CALABRO said that he probably ordered utilizing his cellular phone, but would not show investigators the website on his cellular phone. CALABRO said that he paid between $400-$500 for the order. CALABRO stated that the product was intended to "get you messed up".

22. CALABRO told investigators that the parcel was supposed to be delivered to 419 Zara Street last Tuesday, May 12, 2015, but he looked at the FedEx website and learned that the parcel was seized. He obtained a phone number (the number appeared to be 440-891-3897), which

he produced on a small scrap piece of paper from his wallet, from FedEx, in which to contact Customs. CALABRO said that when he contacted the number, he was told that he would receive seizure notification in the mail.

23.    CALABRO provided his cellular phone number: 412-980-4676, which is provided through Cricket. A Cricket phone was seized from CALABRO at the time of his arrest (Cricket ZTE cellular telephone, Serial Number: 327B50733AAE).

24.    Subsequent to the controlled delivery, a federal search warrant was obtained for the Cricket ZTE phone seized from CALABRO, at Mag. No. 15-604M. A search of the phone revealed stored Gmail messages between **henryjogger@gmail.com** (used by CALABRO) and lvyuanbio26@lyextract.com (used by the supplier in China). These messages revealed that the user of **henryjogger@gmail.com** was ordering controlled substances from the user of lvyuanbio26@lyextract.com. Specifically, on or about April 9, 2015, **henryjogger@gmail.com** sent an email to lvyuanbio26@lyextract.com which stated, "Please start the order for 3kg to be shipped I want it half yellow half white and ship the different bk-mdma in 2 different packages according to color send to 839 fidelity Dr by dhl". Note that bk-MDMA is another name for methylone, which is a similar substance to ethylone, the drug seized in this case. As part of its Rule 16 disclosures, the United States provided the search warrant results to the defendant. In addition to the April 9 order of bk-MDMA, the emails revealed that CALABRO had previously ordered controlled substances or controlled substance analogues utilizing **henryjogger@gmail.com**.

25.    CALABRO was subsequently federally indicted at criminal number 15-cr-137. On September 26, 2016, CALABRO pleaded guilty to the sole count of the Indictment – attempted

possession with intent to distribute a quantity of ethylone. Sentencing is presently set for June 27, 2017, in front of the Honorable Nora Barry Fischer, United States District Court Judge.

26. On March 8, 2017, in preparation for sentencing, defense counsel for CALABRO provided an email chain to the government. This email chain appears to be a continuation of the April 9, 2015 email chain between CALABRO, using **henryjogger@gmail.com**, and the Chinese ethylone supplier, using lvyuanbio26@lyextract.com, which the government had previously provided to the defendant. Upon review, your affiant believe that this email includes portions of the conversation between CALABRO and the supplier which were not extracted from the search of CALABRO's Cricket ZTE phone pursuant to the search warrant. The email provided by CALABRO contains additional drug related emails between CALABRO and the Chinese supplier. As a result, I have probable cause to believe that CALABRO's Gmail account contains additional correspondence with lvyuanbio26@lyextract.com, which was not extracted from CALABRO's Cricket ZTE phone.

27. Your Affiant believes that a search of email account **henryjogger@gmail.com** from January, 2015 through May 18, 2015 (the date of the controlled delivery) will yield additional evidence of the crimes alleged in this affidavit. Further, Your Affiant has sent a preservation request to Google, which suggests that the emails sought are still stored at Google.

## Conclusion

28. Based upon the information contained in this affidavit, your Affiant submits there is probable cause to believe that the e-mail account identified herein was used in connection with the trafficking or conspiracy to traffic in a controlled substance, to wit, Ethylone. Furthermore, probable cause exists to believe the contents of the e-mail account contains the evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846. By this affidavit, I

request that the Court issue a search warrant directing Google to disclose to government authorized persons, the e-mail and other information stored on Google computer systems for the computer accounts and files specified in Section I of Attachment B related to the e-mail account **henryjogger@gmail.com**.

29.  I also request that the Court authorize that upon receipt from Google of the information described in Section I of Attachment B, government authorized persons will review that information to locate and seize the items described in Section II of Attachment B as evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.  The warrant will be faxed and/or e-mailed to Google Personnel.  Because the warrant will be served on Google by fax or email, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## Request for Sealing

30.     I further represent that if the fact that this warrant is being requested is made known to the defendant, such disclosure may have a significant and negative impact on obtaining the information requested herein. While a preservation request has been made to Google, it is possible that should CALABRO learn of the impending search warrant, he may attempt to delete any relevant emails. Therefore, your Affiant requests that the Affidavit in support of the Search Warrant, all papers in support of this affidavit, and the Search Warrant be sealed until further order of the Court.

Respectfully submitted,

_Brianna M. Tetrault_
Brianna M. Tetrault
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on April 6, 2017:

_Cynthia R. Eddy_
HONORABLE CYNTHIA REED EDDY
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

**Property to Be Searched:**

This warrant applies to information associated with email account **henryjogger@gmail.com** - that is stored at premises controlled by Google, Inc., a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## **ATTACHMENT B**

### **Items to be Seized**

**I. Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A for the time period of **January 1, 2015 to May 18, 2015**:

The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

The types of service utilized;

All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

All saved "chat" and or "instant message" transcripts associated with the email account described in Attachment A.

All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II.   Information to be seized by law enforcement as evidence

All records constituting evidence, fruits, and instrumentalities of engaging in the trafficking of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and conspiracy to commit the same in violation of 21 U.S.C. § 846, to include, without limitation, the following:

a) All records and information that identify individuals or correspondents engaged in the offense of trafficking of a controlled substance or conspiracy to commit the same;

b) All records and information that evidences or identifies the means and methods by which controlled substances are being manufactured, distributed, or dispensed or attempted to be manufactured, distributed, or dispensed;

c) All records and information that evidences or identifies the means of payment or financing of the trafficking of a controlled substance or conspiracy to commit the same;

d) All records and information that evidences or identifies the sources of controlled substances including names, addresses, phone numbers, or any other identifying information;

e) All records and information that evidences or identifies transactions involving the sale, trade, or other means of transfer of controlled substances including the types of controlled substances, amounts, prices, as well as dates, places, and amounts of specific transactions;

f) All chats or instant messages stored and presently contained in, or on behalf of, the above referenced e-mail account that reflect the importation, trafficking, distribution and/or mailing of prescription drugs and/or the handling of proceeds and assets obtained therefrom.

g) All of the records and information described above in Sections I (b),(c),(d), and (f).

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS

## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google, Inc., and my official title is _____. I am a custodian of records for Google, Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.  such records were kept in the ordinary course of a regularly conducted business activity of Google, Inc.; and

c.  such records were made by Google, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date                       Signature